**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MAURICE PIERCE,                     :
                                    :  Civil Action No. 11-3965 (FSH)
          Petitioner,               :
                                    :
          v.                        :    **OPINION**
                                    :
PAULA DOW, et al.,                  :
                                    :
          Respondents.              :


**APPEARANCES:**

     MAURICE PIERCE, Petitioner *pro se*
     # 416666/981856B
     Northern State Prison
     168 Frontage Road
     Newark, New Jersey 07114

     SARA BETH LIEBMAN, ESQ.
     UNION COUNTY PROSECUTOR'S OFFICE
     32 Rahway Avenue
     Elizabeth, New Jersey 07202
     Counsel for Respondents

**HOCHBERG**, District Judge

     Petitioner Maurice Pierce ("Petitioner"), a convicted state prisoner presently confined at the Northern State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about April 14, 2003. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

A. Procedural History

On February 16, 2001, a Union County grand jury indicted Petitioner on the following counts: (Count One) first degree robbery, in violation of N.J.S.A. 2C:15-1; (Count Two) third degree unlawful possession of a firearm, in violation of N.J.S.A. 2C:39-5b; and (Count Three) second degree possession of a weapon, a firearm, for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a. (Ra23,[1] Union County Indictment No. 01-02-00198-I at Da1-Da2.) Petitioner also was charged under a separate indictment on February 16, 2001, with second degree possession of a firearm by a previously convicted person, in violation of N.J.S.A. 2C:39-7. (*Id.*, Union County Indictment No. 01-02-00199-I at Da3.)

A trial was held on the first indictment before a jury and the Honorable James C. Heimlich, J.S.C., in late October 2002. On October 30, 2002, the jury returned a verdict of guilty on all counts under Indictment No. 01-02-00198-I. Following the jury verdict, a separate trial was commenced on October 30, 2002, before the same jury, on the second indictment, Indictment

---

[1] "Ra" denotes the appendix or record of the state court proceedings as submitted by Respondents with their answer to this habeas petition. (See ECF Nos. 17-2, 18.)

No. 01-02-00199-I.  The jury also found Petitioner guilty on the second indictment.  (Ra23 at 1.)

On April 4, 2003, Judge Heimlich conducted a sentencing hearing, granting the State's motion to sentence petitioner to a discretionary extended term sentence as a persistent offender under *N.J.S.A.* 2C:44-3a.  The court sentenced Petitioner to an extended term of 40 years in prison with 16 years parole ineligibility on Count One (armed robbery) to run concurrently with a sentence Petitioner then was serving.  On Count Two (unlawful possession of a firearm), Petitioner was sentenced to a four-year prison term to run concurrently with the sentence imposed on Count One.  On Count Three (possession of a firearm for an unlawful purpose), the court imposed an eight-year prison term with a parole ineligibility term of three year to run concurrently with the sentences imposed on Counts One and Two.  Finally, on the separate Indictment No. 01-02-00199-I, the court imposed a term of eight years in prison to run concurrently with the sentences imposed on the first indictment, Indictment No. 01-02-00198-I.  (*Id*. at 2.)

Petitioner thereafter filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey Appellate Division.  On May 11, 2005, the Appellate Division affirmed the conviction and sentence.  (Ra3.)  Petitioner filed

a petition for certification, which the Supreme Court of New Jersey granted on September 12, 2005, on the sole issue of the extended term sentence. (Ra5.) On August 6, 2006, the Supreme Court of New Jersey remanded Petitioner's extended term for resentencing. *State v. Pierce*, 188 N.J. 155 (2006).

Petitioner was resentenced on September 22, 2006, and the original terms were re-imposed. (Ra22.)

On October 2, 2006, Petitioner filed a petition for post-conviction relief ("PCR") in state court. While that state PCR petition was pending, on February 6, 2008, the Appellate Division conducted a hearing on the re-sentence and affirmed the trial court's resentence, except remanding for entry of an amended sentence merging Petitioner's conviction for possession of a weapon for an unlawful purpose into his conviction for armed robbery and vacating the sentence on the possession of a weapon for an unlawful purpose conviction. (Ra6.) The Appellate Division thereafter issued an opinion affirming the resentence on February 11, 2008. (Ra7.) On April 8, 2008, the Supreme Court of New Jersey denied certification. (Ra10.)

On August 20, 2008, Petitioner filed an amended PCR petition. After conducting a hearing on November 20, 2008, Judge Heimlich denied the petition. (Ra23 at 3.)

Petitioner then filed an appeal from denial of his PCR

petition. On December 1, 2010, the Appellate Division affirmed

the trial court's denial of post-conviction relief. (Ra12;

*State v. Pierce*, 2011 WL 13840 (N.J. Super. A.D. Dec. 1, 2010.)

The Supreme Court of New Jersey denied certification on April

14, 2011. (Ra15.)

On June 30, 2011, Petitioner filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, before this Court.

The State filed an answer, together with the relevant state

court record, on August 8, 2012 and August 17, 2012. (ECF Nos.

17, 18.) Petitioner filed his traverse or reply on September

17, 2012. (ECF No. 19.)

B. Factual Background

The facts of this case were recounted below and this Court,

affording the state court's factual determinations the

appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply

reproduce the recitation as set forth in the published opinion

of the Superior Court of New Jersey, Appellate Division, decided

on May 11, 2005, with respect to Petitioner's direct appeal:

> The events leading to these charges occurred on November
> 11, 2000, when Arthur Vaz drove to a club in Hillside at
> about 12:45 a.m. When he got there, he parked on Yale
> Street in a residential neighborhood. As he was getting
> out of the car, a beige Oldsmobile pulled up beside him, a
> man got out, began talking to him, pulled a gun, pointed it
> at Vaz's chest and told Vaz to give him everything he had.

5

Vaz gave him $50 to $60 and a cell phone. The man got back into the Oldsmobile and drove away.

Vaz gave a full description of the man to police and described the gun. Several days after the robbery, Vaz picked defendant out of a photo lineup and identified him as the man who robbed him. The weapon described by Vaz was found with defendant when he was arrested.

At trial, defendant presented an alibi defense with his sister, Phyllis Pierce, testifying that defendant was with her and their sister Shirley in Atlantic City at the time of the robbery.

(Ra3, May 11, 2005 Appellate Division Opinion at 2-3.)

## II.  STATEMENT OF CLAIMS

Petitioner asserts the following claims in his petition for habeas relief:

**Ground One:**  The discretionary extended term sentence violated Petitioner's constitutional right to a trial by jury.

**Ground Two:**  Petitioner was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to request a *Wade*[2] hearing.

**Ground Three:**  Petitioner's statement was not voluntary or knowing, and should have been suppressed, because Petitioner was under the influence of marijuana and alcohol and had physical injuries at the time of his interrogation.

**Ground Four:**  Trial counsel was ineffective in allowing the handgun to go into the jury room without first examining it.

---

[2] *United States v. Wade*, 388 U.S. 218 (1967).

(ECF No. 1, Petition at ¶ 12.)

The State essentially contends that the petition is without merit, or fails to raise a claim of federal constitutional dimension that would entitle Petitioner to habeas relief. The State also asserts that Petitioner failed to exhaust his state court remedies regarding Ground Four, but despite this failure to exhaust, the claim is subject to dismissal on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## III.  <u>STANDARD OF REVIEW</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2254 now provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, --- U.S. ----,

----, 132 S. Ct. 2148, 2151, 183 L.Ed.2d 32 (2012).

"Clearly established Federal law" should be determined as

of the date of the relevant state court decision and is limited

to the record that was before the state court that adjudicated

the claim on the merits. *Greene v. Fisher*, ---U.S. ----, 132 S.

Ct. 38, 181 L.Ed.2d 336 (2011); *Cullen v. Pinholster*, --- U.S. -

--, 131 S. Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). A state-

court decision is "contrary to" clearly established federal law

if the state court (1) contradicts the governing law set forth

in Supreme Court cases or (2) confronts a set of facts that are

materially indistinguishable from a decision of the Supreme

Court and nevertheless arrives at a different result. *Williams*

*v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544

F.3d 266, 274 (3d Cir. 2008). The state court judgment must

contradict clearly established decisions of the Supreme Court,

not merely law articulated by any federal court, *Williams*, 529

U.S. at 405, although district and appellate federal court

decisions evaluating Supreme Court precedent may amplify such

precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir.

2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d

877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274–75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). Nor is habeas relief available merely because the state court applied federal

law erroneously or incorrectly. *See Harrington v. Richter*, ---
U.S. ----, ----, 131 S. Ct. 770, 785, 178 L.Ed.2d 624 (2011)
(Under § 2254(d)(1), "an unreasonable application of federal law
is different from an incorrect application of federal law."
(quoting *Williams* at 410)); *see also Metrish v. Lancaster*, ---
U.S. ----, 133 S. Ct. 1781, 1786-87, 185 L.Ed.2d 988 (2013);
*Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v.
Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's
determination that a claim lacks merit precludes federal habeas
relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Harrington*, 131 S.
Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664
(2004)). Accordingly, "[a]s a condition for obtaining habeas
corpus from a federal court, a state prisoner must show that the
state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error
well understood and comprehended in existing law beyond any
possibility for fair-minded disagreement." *Harrington*, 131 S.
Ct. at 786-87. *See also Metrish v. Lancaster*, 133 S. Ct. at
1787.

The Supreme Court repeatedly has reiterated the deference
that the federal courts must accord to state court decisions.
*See Felkner v. Jackson*, ---U.S. ----, 131 S. Ct. 1305, 1307, 179

L.Ed.2d 374 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Cullen v. Pinholster*, 131 S. Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). *See also Harrington*, 131 S. Ct. at 786 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold."); *Lockyer*, 538 U.S. at 75 ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous."). Further, AEDPA's standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing, *inter alia*, 28 U.S.C. § 2254(d)(2)). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of "rebutting the presumption by 'clear and convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1)); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief under AEDPA, the court may grant the writ only if the error was not harmless. Under the harmless error standard, the court must "assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). The court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citing *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969)); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir.1998).

## IV.   DISCUSSION

A.   Extended Term Sentence

Petitioner first claims that the "discretionary offender extended term violated [his] constitutional right to a trial by

13

jury[,]" as guaranteed by the Sixth Amendment. (Pet. at ¶ 12,

Ground One.) Petitioner argues that the trial judge's use of

the "protection of the public" factor in determining an extended

term for a persistent offender violates his right to a jury

trial as well as his right to due process. (*Id.*) Petitioner

exhausted this claim on direct review in state court.

Indeed, the issue of Petitioner's extended term sentence

was considered by the New Jersey Supreme Court. *State v.*

*Pierce*, 188 N.J. 155 (2006). Citing the Supreme Court's

decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and

*Blakely v. Washington*, 542 U.S. 296 (2004), Petitioner argued

that his Sixth Amendment rights were violated when the trial

court, and not the jury, decided facts that determined whether

he would be sentenced to a prison term exceeding the maximum

ordinary-term range. *State v. Pierce*, 188 N.J. 155, 161 (2006).

The New Jersey court specifically held that the sentencing

judge's fact-findings about Petitioner's prior convictions under

the persistent offender statute[3] did not violate his right to a

_____

[3] The persistent offender statute, N.J.S.A. 2C:44-33(a), gives
the sentencing court discretion to impose an extended sentence
when the statutory prerequisites for an extended sentence are
found. Namely, a defendant is deemed a persistent offender if,
at the time of the commission of the crime, he was 18 years of
age or older and had "been previously convicted on at least two
separate occasions of two crimes, committed at different times,
when he was at least 18 years of age, if the latest in time of
these crimes or the date of the defendant's last release from

trial by jury, and that Petitioner's maximum sentence under the
persistent offender statute is the top of the extended term
range for purposes of *Apprendi*. *Pierce*, 188 N.J. at 163–67.
The Court, however, remanded the matter for re-sentencing to
determine the appropriate sentence "within the expanded range of
sentences available from the bottom of the ordinary-term to the
top of the extended-term range." *Id*. at 171. The Court further
noted that Petitioner could not be subjected to a sentence in
excess of the one previously imposed. *Id*. at 174. On remand,
Petitioner was re-sentenced to the same term of imprisonment as
originally imposed. (Ra22.)

A federal court may review a state sentence only where the
challenge is based upon "proscribed federal grounds such as
being cruel and unusual, racially or ethnically motivated, or
enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp.
408, 415 (D.N.J .1987) (citation omitted). Thus, a petitioner's
challenge to a state court's discretion at sentencing is not
reviewable in a federal habeas proceeding unless it violates a
separate federal constitutional limitation. *See Vreeland v.
Warren*, Civ. Action No. 11-5239 (JAP), 2013 WL 1867043, *17
(D.N.J. May 2, 2013); *Rorie v. Beard*, Civ. Action No. 04-3380,

confinement, whichever is later, is within 10 years of the date
of the crime for which the defendant is being sentenced."
N.J.S.A. 2C:44-3(a).

2005 WL 825917, *6, fn. 1 (E.D. Pa. Apr. 7, 2005). *See also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984).

In this case, Petitioner does not assert an Eighth Amendment violation regarding his sentence. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). The Supreme Court has identified three factors to be applied in determining whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983).

Petitioner fails to present any cogent argument as to why his sentence is unconstitutional under the Eighth Amendment. There is no showing that his sentence is grossly disproportionate to the crime he committed. Indeed, extended sentences are common in the State of New Jersey and other states, and they are not contrary to legitimate penological

schemes.  Therefore, even if the Court were to read an Eighth Amendment argument into Petitioner's claims, it would not state a violation of federal constitutional limitations.

As to Petitioner's argument regarding an alleged violation of his Sixth Amendment jury trial rights under *Apprendi* and *Blakely*, this Court finds no merit.  In *Apprendi v. New Jersey*, the Supreme Court held that pursuant to the Sixth Amendment right to trial by jury, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 471 (2000).  In *Blakely v. Washington*, the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. 296, 302 (2004) (internal quotations omitted).

Here, Petitioner appears to argue that the Supreme Court's decisions in *Apprendi* and *Blakely* invalidate his extended sentence.  That argument is unavailing.  Petitioner was sentenced to an extended term as a persistent offender.  *State v. Pierce*, 188 N.J. at 160.  To establish that Petitioner was

subject to an extended sentence under the persistent offender statute, the state court properly took notice of Petitioner's prior convictions. *Id*. at 170. A court may take notice of prior convictions at sentencing. *See Apprendi*, 530 U.S. at 490. Moreover, the Supreme Court of New Jersey expressly rejected Petitioner's habeas claim presented here on direct review, as follows:

> In respect of defendant Pierce, the ordinary-term range of sentence was the maximum sentence applicable to him based on his conviction for armed robbery until the court determined that he satisfied the statutory criteria to be a persistent offender. With that judicial determination, which is permissible under the prior conviction exception recognized by *Blakely* and its progeny, the permissible range of sentences available in the court's discretion expanded up to a new maximum—the top of the extended-term range. As we have already explained, the fact-findings related to the statutory criteria are fact-findings that may permissibly be made by a court under *Apprendi* and *Blakely*. The additional judicial finding of "need to protect the public" is no different from the judicial findings as to aggravating factors, which we permitted the court to make on remand in *Natale* [*State v. Natale*, 184 N.J. 458 (2005)]in connection with the court's imposition of a sentence higher than the old maximum represented as the former presumptive term. Defendant cannot claim a lack of notice. He knew that based on his prior record the prosecutor could seek to have him found to be a persistent offender under N.J.S.A. 2C:43-3(a) and to ask that he be sentenced within the discretionary extended-term range. Defendant's sentencing within the discretionary extended-term range on the basis of judicial, as opposed to jury, findings equates to our holding in *Natale* wherein we allowed the defendant to be sentenced to a period of incarceration above the presumptive term based on judicially found aggravating factors. No new range is being introduced into defendant's resentencing on remand. The extended-term range was available based on the

juxtaposition of his current conviction and the court's
findings as to his persistent offender status based on his
prior convictions.

*Pierce*, 188 N.J. at 172-73.

This Court recognizes that it was Petitioner's case that

prompted the Supreme Court of New Jersey to revamp sentencing

procedures for discretionary extended-term sentences so that

such procedures would comply with the Sixth Amendment, and that

this case was the first instance for the State court to apply

the federal law recognized in *Apprendi* and *Blakely* to a

discretionary extended term sentence.  Therefore, in light of

the careful review by the New Jersey Supreme Court, as discussed

above, this Court finds no indication that the State court

unreasonably applied established federal law in reaching its

decision, or that the State court decision was based on an

unreasonable application of the facts.  Petitioner has not

demonstrated that the State court's holding, when evaluated

objectively and on the merits, resulted in an outcome that

cannot be reasonably justified.  *Harrington*, 131 S. Ct. at 786;

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir.

1999).  As Petitioner was properly sentenced in accordance with

state law, and where he has not provided this Court with any

justification to grant habeas relief with respect to his

sentence on federal constitutional grounds, Ground One for

habeas relief is denied.

B.  <u>Ineffective Assistance of Counsel</u>

Petitioner next alleges that he was denied his Sixth

Amendment right to effective assistance of counsel because his

trial counsel failed to request a *Wade* hearing, and because

counsel failed to examine the handgun before it was allowed to

go into the jury room during deliberations.  (Pet., Grounds Two

and Four.)

The Court first will discuss the clearly established

federal standard as set forth in *Strickland v. Washington*, 466

U.S. 668 (1984).  In *Strickland*, the Supreme Court "has

recognized that the right to counsel is the right to the

effective assistance of counsel.  Government violates the right

to effective assistance when it interferes in certain ways with

the ability of counsel to make independent decisions about how

to conduct the defense.  Counsel, however, can also deprive a

defendant of the right to effective assistance, simply by

failing to render adequate legal assistance."  *Strickland*, 466

U.S. at 685-86 (internal quotation marks and citations

omitted)(citing and quoting *McMann v. Richardson*, 397 U.S. 759,

771 n. 14 (1970), and *Cuyler v. Sullivan*, 446 U.S. 335, 344-50

(1980)).  "The benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797-98 (3d Cir. 2013).

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, **and** (2) that but for counsel's errors the result of the underlying proceeding would have been different. *Strickland*, 466 U.S. at 687-88. "Since *Strickland*, the Supreme Court and the Third Circuit have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013); *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009)(citing cases).

When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 131 S.Ct. at 785). For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an

*incorrect* application of federal law." *Id.* (internal quotation marks omitted)(emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted); *see also Burt v. Titlow*, --- U.S. ----, --- S.Ct. ----, 2013 WL 5904117 (Nov. 5, 2013).

1. *Failure to Request a Wade Hearing*

Petitioner alleges that his trial counsel was asked by the trial judge if she intended to request a *Wade* hearing. Counsel allegedly replied that she was Petitioner's third lawyer and that such a motion should have been made earlier in the pretrial proceedings. Petitioner contends that counsel was ineffective for not requesting a *Wade* hearing because identification was the only evidence the State had and it should have been challenged before trial at a *Wade* hearing. (ECF No. 1, Pet. at Ground Two.) Petitioner raised this ineffective assistance of counsel claim in his state PCR proceedings.

The PCR court rejected Petitioner's claim, finding that neither prong under *Strickland* had been met by Petitioner. First, the PCR court determined that counsel did not render deficient performance. The court noted that counsel had reviewed the photo array and was satisfied that a *Wade* hearing on the identification procedure was unnecessary. Instead, counsel chose to aggressively and vigorously cross-examine the State's witnesses on identification. (ECF No. 18-2, Ra24, November 20, 2008 PCR Transcript at 18.)

More significantly, the PCR court found that a *Wade* hearing would not have changed the outcome of the trial, and thus, Petitioner could not satisfy the second *Strickland* prong of prejudice. In particular, the court found that there was no evidence of impermissible suggestiveness as argued by Petitioner's PCR counsel. The facts showed that the police who conducted the photo identification did not discuss the matter with the victim before the identification procedure. The victim immediately identified Petitioner from the photo array, and the police detective did not inform the victim that the photo selected was that of the Petitioner. (*Id.*, 18:10-17.)

In addition, the photos in the array were not "grossly dissimilar," but contained "varying hairstyles." (*Id.*, 18:18-20.) Moreover, at the time of the crime, the suspect had worn a

"do-rag," and Petitioner was told that hairstyles, moustaches and beards can be changed easily, and therefore, should not be the focus of the identification. (*Id.*, 18:21-19:4.)

The PCR court further found the circumstances of the identification reliable based on several other factors:

> ... the victim was three to four feet from the defendant when the robbery occurred. The victim testified that the incident occurred for about four or five minutes. The victim contends or asserts that the view was a clear view and the opportunity to view the defendant was such that it was a long period of time to look at the defendant and that the victim had a heightened sense of awareness since the defendant was pointing a gun at the victim. The victim provided a description of the defendant which is consistent with the trial testimony, including his weight and approximate age. The Court does not find there is a significant difference between a 21 and 25-year old man, as suggested earlier.

(*Id.*, 19:5-19.)

Finally, the PCR court concluded that had a *Wade* hearing been conducted, the photo array and identification procedure would have been allowed and therefore, the *Wade* hearing would not have changed the outcome of the trial. (*Id.*, 19:20-25.)

On appeal from denial of the PCR petition, the Appellate Division affirmed, likewise finding that Petitioner had not shown deficient performance by trial counsel for not requesting a *Wade* hearing. The court specifically noted that counsel's decision constituted a sound "trial strategy" as counsel

conducted "very aggressive trial examination" of the State's witnesses before the jury. *Pierce*, 2011 WL 13840 at *3.

The state appellate court also applied the Supreme Court standards governing out-of-court identifications as set forth in *Manson v. Brathwaite*, in determining that the procedures employed in this case were not so suggestive as to give rise to "a substantial likelihood of irreparable misidentification." 432 U.S. 98, 116 (1977) (citation and internal quotation marks omitted). The Appellate Division remarked that the photo array itself was not suggestive, the victim relied on his own recollection to identify the robber, and the Petitioner was "only three feet away from the victim and his face was unobstructed with the victim looking directly at him." *Pierce*, 2011 WL 13840 at *3. The victim also identified the gun that Petitioner had pointed at the victim. *Id.*

The Appellate Division further quoted the reliability factors recognized in *Neil v. Biggers*, 409 U.S. 188, 199 (1972), and found that all of these factors were present to substantiate the reliability of the victim's out-of-court identification. Namely, "the victim had the 'opportunity ... to view the criminal at the time of the crime;' the degree of attention that he demonstrated; the level of certainty he exhibited when he made an immediate identification upon being shown the photo

array; and the time between the crime and the viewing, which was only a few days." *Pierce, supra* (citing *Biggers*, *supra*). Accordingly, the Appellate Division concluded that Petitioner was unable to meet the second prong under *Strickland*, *i.e.*, that there was no "reasonable probability" that, but for counsel's deficiency in requesting a *Wade* hearing, the outcome of the trial would have been different. *Pierce*, *supra* (citing *Strickland*, 466 U.S. at 694).

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal. *See Simmons v. United States*, 390 U.S. 377, 383 (1968). An identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." *Id*. at 384. In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id*. at 383–84. "It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification." *Biggers*, 409 U.S. at 198.

The Supreme Court has held that, even if an identification procedure is unnecessarily suggestive, admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability, *Manson v. Brathwaite*, 432 U.S. at 106, for reliability is the "linchpin in determining the admissibility of identification testimony." *Id*. at 114; *see also United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008). The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.'" *Brathwaite*, 432 U.S. at 106 (quoting *Biggers*, 409 U.S. at 199); *see also United States v. Maloney*, 513 F.3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199. Significantly, the Supreme Court has ruled that, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial

identification procedures, the identification does not violate due process. *See Coleman v. Alabama*, 399 U.S. 1, 7 (1970).

Here, as discussed above, the New Jersey state courts determined that the out-of-court identification of Petitioner was not contrary to, or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification. *See Biggers*, 409 U.S. at 199. Moreover, the state courts concluded that trial counsel's decision not to request a *Wade* hearing constituted sound trial strategy, and that under the circumstances of the victim's identification of Petitioner, a *Wade* hearing would not have altered the outcome of trial. Thus, Petitioner has not demonstrated deficient performance by counsel or resulting prejudice, as required under *Strickland* to prevail on this claim of ineffective assistance of trial counsel.

Therefore, based on all of the above, this Court concludes that the determination of the state PCR court and appellate court in finding no constitutionally ineffectiveness of counsel, resulted in a decision that was neither contrary to, nor involved an unreasonable application of, clearly established federal law under *Strickland*, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*See Williams*, 529 U.S. at 413.  The Court will deny federal habeas relief on this ineffective assistance of counsel claim because it is substantively meritless.

2.  *Failure to Examine Gun Before Submission to Jury*

Petitioner also argues that trial counsel was constitutionally ineffective because she did not examine the gun before it was submitted to the jury.  Specifically, Petitioner contends that the gun was tagged and that tag stated that Petitioner was arrested in a stolen vehicle.

The State counters that this claim is unexhausted, but even so, such claim is meritless.  This Court notes that Petitioner had raised this claim on direct appeal, but the Appellate Division did not consider it, finding that it was "best left to post-conviction relief proceedings."  (Ra3, May 11, 2005 App. Div. Op. at 20.)  There was no discussion of this ineffectiveness of counsel issue at the November 20, 2008 state PCR hearing, and the claim was not raised in Petitioner's brief filed on appeal from denial his PCR petition.  Thus, it would appear that the claim was not exhausted.

Nevertheless, the Court may deny this claim on the merits, notwithstanding Petitioner's failure to exhaust his available state court remedies.  28 U.S.C. § 2254(b)(2).

On direct appeal, Petitioner raised the underlying claim that the gun was presented to the jury with an evidence tag that noted that Petitioner was "apprehended in a stolen motor vehicle." Petitioner argued that the trial judge erred in denying his motion for a mistrial and stressed that the curative jury instruction only served to "highlight" the tag with "a misrepresentation of the facts." (Ra3, May 11, 2005 App. Div. Op. at 13.)

The Appellate Division noted that the trial judge gave a curative instruction "immediately after the tag was discovered, and the jurors responded that they understood the instruction." (*Id*. at 14-15.) Further, the appellate court opined that although the trial judge expressly instructed the jury that Petitioner "had nothing to do with the stolen motor vehicle, that mistake was of no consequence to the outcome because it indicated that defendant was less culpable than he actually was." (*Id*. at 15.) The Appellate Division concluded that the "trial court properly exercised its discretion in denying defendant's motion for a mistrial," where the curative instruction given by the trial court was adequate and defense counsel made no objection. (*Id*.)

This Court finds that, under these circumstances, Petitioner cannot meet the *Strickland* test to prevail on this

claim of ineffective assistance of counsel. Regardless of whether trial counsel should have first examined the gun before it was presented to the jury, the court gave a strong curative instruction admonishing the jury that they were to disregard the tag and further informing the jury several times that Petitioner was not involved with the stolen vehicle. Consequently, there was no prejudicial impact against Petitioner. The other evidence against Petitioner, namely the witness' identification of the gun at trial and of Petitioner as the culprit, was sufficiently strong such that, had trial counsel removed the tag before it was presented to the jury, it would not have changed the outcome of the trial. Therefore, this claim is denied for lack of merit.

C. *Petitioner's Statement Should Have Been Suppressed*

Finally, Petitioner contends that his statement should have been suppressed because Petitioner was suffering from injuries and was under the influence of marijuana and alcohol at the time, rendering him incapable of giving a knowing and voluntary statement. (Pet., ¶ 12, Ground Three.) This claim was raised on direct appeal.

At a pretrial hearing regarding suppression of Petitioner's statement, Petitioner testified that he had sustained a broken foot and sprained ankle as a result of fleeing from police in a

stolen vehicle.  Petitioner had jumped out of the car while it was going 40 miles per hour during his flight from police. However, because of his injuries, police were able to apprehend him and arrested Petitioner.  Petitioner stated that he was taken to the hospital in an ambulance but was later released that same night, at which time the police took Petitioner to headquarters for questioning.  (Ra3, May 11, 2005 App. Div. Op. at 7.)

Petitioner further testified that he was in too much pain and should not have been released from the hospital.  He also stated that the police officers were "forcing" him and "putting pressure" on him to give a statement on a "package deal" concerning his charges.  (*Id.*)  Petitioner additionally testified that he had never heard of *Miranda*[4] warnings before and did not understand the waiver.  However, he admitted that he had been arrested before and had six prior convictions on indictable offenses.  Finally, petitioner testified that he had a ninth grade education.  (*Id.*)

Detectives Barr and Dvorak were the officers who questioned Petitioner and took his statement.  At the pretrial hearing, Detective Barr testified that Petitioner did not appear to be in "any great pain" at the time of questioning.  (*Id*. at 8.)  He

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

also stated that, while Petitioner admitted to smoking marijuana and drinking alcohol, Petitioner did not seem intoxicated. (*Id.*)

Detective Dvorak testified that interrogation of Petitioner took about thirty minutes. During the interrogation, Petitioner was cooperative and his speech was "coherent." (*Id.*) Dvorak noticed, however, that Petitioner was in "slight pain" because Petitioner had "grimaced" a little when he placed weight on his foot. (*Id.*) Dvorak further testified that he had 15 years of experience in narcotics, and that based on this experience, Petitioner did not exhibit any signs of intoxication, nor did Petitioner appear sleepy or confused at any point during the interrogation. Dvorak also testified that he believed Petitioner's responses were voluntary when Petitioner signed the *Miranda* waiver. Dvorak stated that Petitioner never asked for an attorney and did not indicate at any time that he wanted the interrogation to stop. (*Id.*)

The Appellate Division reviewed the factual record and found no merit to Petitioner's claim that his statement was not voluntary. First, the court noted that, in order to determine whether there has been a "'knowing, intelligent, and voluntary waiver of *Miranda* rights,' the trial court must review 'the totality of the circumstances, including the characteristics of

the defendant and the nature of the interrogation.'" (*Id.*,

quoting *State v. DiFrisco*, 174 N.J. 195, 235 (2002), *cert.*

*denied*, 537 U.S. 1220 (2003)). "'[T]he ultimate question is

whether the defendant's will was overborne and his capacity for

self-determination seriously impaired." (*Id.*, quoting *State v.*

*Wade*, 40 N.J. 27, 35 (1963)). In particular, the court stated:

> Here, the trial judge rendered a lengthy and detailed
> decision on the record, in which he found that defendant
> was only given aspirin at the hospital and was cooperative
> and coherent despite having a broken foot. The judge noted
> that defendant's medical records stated that he was "alert"
> and that his condition was "non-urgent." Defendant never
> asked to stop the interview or to speak with an attorney.
> He was given *Miranda* warnings twice, after which he gave a
> detailed account of where and when he purchased the gun.
>
> Although defendant's statement was made at 1:45 a.m., the
> total length of the interrogation was a half hour.
> Moreover, defendant's claim that he was unfamiliar with
> *Miranda* warnings is belied by his "extensive experience
> with the criminal justice system." *State v. Roach*, 146
> N.J. 208, 227, *cert*. *denied*, 519 U.S. 1021 [] (1996). His
> criminal record strongly indicates that he understood the
> *Miranda* warnings and voluntarily waived them. *Ibid*. There
> was no error in the trial court's denying defendant's
> motion to suppress.

(Ra3, May 11, 2005 App. Div. Op. at 10.)

Under the Fifth Amendment's privilege against self-

incrimination and the Due Process Clause of the Fourteenth

Amendment, a confession must be voluntary to be admitted into

evidence. *See Dickerson v. United States*, 530 U.S. 428, 433

(2000). *Miranda* also provides that the accused may waive his

rights if he does so "voluntarily, knowingly and intelligently."
*Miranda*, 384 U.S. at 475.

Certain procedural safeguards must be employed to protect
the privilege. Generally, an individual must be warned before
interrogation commences "that he has the right to remain silent,
that anything he says can be used against him in a court of law,
that he has the right to the presence of an attorney, and that
if he cannot afford an attorney one will be appointed for him
prior to any questioning if he so desires." *Id*. at 478-79.
Further, the individual must be given the opportunity to
exercise these rights throughout the interrogation process.
However, once the warnings are given and such opportunity is
afforded, the individual may "knowingly and intelligently waive
these rights" and agree to answer questions or make a statement.
*Id*.

"The requirement that *Miranda* warnings be given does not,
of course, dispense with the voluntariness inquiry. But ...
[c]ases in which a defendant can make a colorable argument that
a self-incriminating statement was 'compelled' despite the fact
that the law enforcement authorities adhered to the dictates of
*Miranda* are rare." *Dickerson*, 530 U.S. at 444 (internal
quotation marks and citation omitted).

The Supreme Court has made clear that a statement is involuntary when a suspect's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). However, a determination of whether a statement is voluntary, requires consideration of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson*, 530 U .S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). These circumstances include not only the accusations of police coercion, *see Colorado v. Connelly*, 479 U.S. 157, 167 (1986), but also such factual aspects as the length of the interrogation, its location, its continuity, the suspect's maturity and experience. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993); *see also Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002).

In determining whether there has been a valid waiver of *Miranda* rights, a court must conduct a two-part inquiry under the aforesaid totality of the circumstances standard. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the court shall examine the voluntariness of the challenged statements to determine whether the waiver was freely and deliberately given, as opposed to being obtained by coercion, intimidation, or

deception.  *See id.*  Second, the court must consider whether the waiver was "knowing and intelligent," that is, whether the suspect was fully aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The "totality of the circumstances" approach is the clearly established federal standard applied to determine whether there has been a voluntary waiver of Miranda rights.  *See, e.g., Fare v. Michael C.*, 442 U.S. 707, 725 (1979).  It looks at the timing of the *Miranda* warnings and the statement given, and the length and nature of the interrogation and the accompanying detention. *See United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989), *cert. denied*, 494 U.S. 1017 (1990).  Same as the federal bench, the New Jersey state courts have traditionally employed the totality of the circumstances test.  *See State v. Presha*, 163 N.J. 304 (2000); *State v. Miller*, 76 N.J. 392, 402 (1978).

"[S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience ... and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant.  The law is ... clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances

enumerated in § 2254(d) are inapplicable." *Miller v. Fenton*, 474 U.S. 104, 117 (1985) (emphasis supplied).

Applying the federal standard here, there is nothing in the record that would suggest that Petitioner was coerced or pressured to give a statement. His interrogation was short, only 30 minutes. There are no allegations that Petitioner was subjected to any physical force or any form of deprivation. He never gave any indication that he wanted to stop the interrogation, or that he wanted an attorney. Moreover, there was no physical evidence, other than Petitioner's own allegation, that he was under the influence. Both detectives testified that Petitioner was "cooperative" and "coherent" and did not exhibit signs of intoxication. Finally, while Petitioner had a ninth grade education, he admitted he was familiar with the criminal justice system, having been convicted nine prior times. Thus, his claim that he did not understand his *Miranda* rights was not credible.

Accordingly, given the totality of the circumstances as set forth in the record, there is no merit to Petitioner's claim that his statement was involuntary or unknowing, and the state courts' decision in denying suppression of the statement was not an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

of the evidence at trial.  *See* 28 U.S.C. § 2254(d)(1), (2).

Thus, Ground Three of the habeas petition will be denied.

## V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  *See* Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## V.  CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied for lack of substantive merit, and a certificate of appealability will not issue.   An appropriate Order follows.


                                    s/ Faith S. Hochberg_____
                                    FAITH S. HOCHBERG
                                    United State District Judge

Dated: November 13, 2013